UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JOHNNY D. ORUM,

          Plaintiff,

v.

JO LYNN CEBULA et al.,

          Defendants.
_____/

Case No. 2:22-cv-130

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]however, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

Plaintiff has also filed a motion for reconsideration (ECF No. 9) of the June 23, 2022, order (ECF No. 6) granting him *in forma pauperis* status and directing him to pay an initial partial filing fee within twenty-eight (28) days. For the reasons set forth below, the Court will grant that motion to the extent that it will issue a revised order granting *in forma pauperis* status and omitting the directive that the initial partial filing fee be paid within twenty-eight (28) days.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

**I.      Pending Motion**

In its June 23, 2022, order (ECF No. 6), the Court granted Plaintiff leave to proceed *in forma pauperis* and directed him to pay an initial partial filing fee of $74.84 within twenty-eight (28) days. Plaintiff now moves for reconsideration of that order, seeking leave to proceed without payment of the initial partial filing fee. (ECF No. 9, PageID.44.) Plaintiff contends that he is unable to pay $74.84 within twenty-eight (28) days because he has "also been ordered to pay $74.84 in another civil action as a partial filing fee." (*Id.*)

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment. *See* Fed. R. Civ. P. 54(b); *see also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). Western District of Michigan Local Civil Rule 7.4(a) provides that "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted." W.D. Mich. LCivR 7.4(a). Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof." *Id.*

The initial partial filing fee equals 20 percent of the greater of (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint. *See* 28 U.S.C. § 1915(b)(1). Plaintiff had an average monthly deposit of $374.21 when he filed his complaint; accordingly, his initial partial filing fee was calculated as $74.84. (ECF No. 6, PageID.37.) Plaintiff is responsible for ultimately paying that fee and, therefore, the Court will not completely waive it. The Court will, however, grant Plaintiff's motion for reconsideration (ECF No. 9) in that it will

4

issue a revised order granting *in forma pauperis* status and omitting the directive that the initial partial filing fee be paid within twenty-eight (28) days.

## II. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. The events about which he complains occurred there. Plaintiff sues Librarian Jo Lynn Cebula and Resident Unit Manager S. Farley.

### A.  Relevant Procedural Background

In 2016, Plaintiff filed a complaint in this Court while incarcerated at the Chippewa Correctional Facility (URF), raising various claims for relief, including First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claims concerning the denial of a Kosher diet including fish or meat on the Sabbath as required by his Jewish faith. Compl., *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 9, 2016), (ECF No. 1). In an opinion and order entered on October 28, 2016, Judge Quist screened the complaint and dismissed certain defendants. Op. & Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Oct. 28, 2016), (ECF Nos. 16, 17). Subsequently, on February 18, 2021, the remaining defendants filed a motion for judgment on the pleadings. Mot., *Orum v. Mich. Dep't of Corr.*, No 2:16-cv-109 (W.D. Mich. Feb. 18, 2021), (ECF No. 198).

In a Report and Recommendation (R&R) entered on April 7, 2021, Magistrate Judge Vermaat recommended granting the motion on the basis that Plaintiff's remaining RLUIPA claims were barred under the doctrine of claim preclusion. R&R, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 7, 2021), (ECF No. 202). Specifically, Magistrate Judge Vermaat concluded that such claims were barred based upon the final judgment issued by the Eastern District of Michigan in *Ackerman v. Washington*, No. 4:13-cv-14137. *Id.*,

PageID.1373–74. *Ackerman* was a putative class action brought by Jewish prisoners against the MDOC in which the Eastern District of Michigan directed that the MDOC must provide all class members with Kosher meat and dairy products on Sabbath days, as well as on the Jewish holidays of Rosh Hashanah, Yom Kippur, Sukkot, and Shavuot, and provide cheesecake on Shavuot. *Ackerman v. Washington*, 436 F. Supp. 3d 1002, 1019 (E.D. Mich. 2020), *aff'd*, 16 F.4th 170 (6th Cir. 2021). Magistrate Judge Vermaat concluded that Plaintiff's claims were barred because, pursuant to *Ackerman*, he now received meat on Sabbath days and during the Jewish holidays noted above. R&R, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 7, 2021), (ECF No. 202, PageID.1379–83). On April 27, 2021, Judge Quist adopted the R&R after noting that no objections had been filed. Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 27, 2021), (ECF No. 206).

The Court received Plaintiff's objections to the R&R on April 29, 2021. Obj., *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 29, 2021), (ECF No. 207). In an order entered on May 14, 2021, Judge Quist considered Plaintiff's objections to be timely filed and vacated the prior order adopting the R&R. Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 14, 2021), (ECF No. 224). After reviewing Plaintiff's objections, Judge Quist determined that claim preclusion did not fully apply because Plaintiff "could not raise his claim [in *Ackerman*] that his sincerely held religious beliefs require him to eat meat on all other Jewish holidays." *Id.*, PageID.1623. Plaintiff could not raise his claim premised upon an individualized belief because it was not common "throughout the *Ackerman* class." *Id.*, PageID.1624. Judge Quist, therefore, adopted in part and rejected in part the R&R, and noted that Plaintiff could "proceed to trial on his RLUIPA claim involving meat on the other Jewish holidays that were not addressed in *Ackerman*." *Id.*, PageID.1625.

6

The remaining defendants subsequently filed a motion to bifurcate Plaintiff's remaining retaliation claims from his RLUIPA claims. Mot., *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 20, 2021), (ECF No. 238). Magistrate Judge Vermaat granted that motion on May 24, 2021. Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 24, 2021), (ECF No. 244). Following a two-day jury trial, the jury returned a verdict in favor of the defendants for Plaintiff's retaliation claims. Jury Verdict, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. June 8, 2021), (ECF No. 268). On December 21, 2021, the parties filed a proposed stipulation and order, seeking dismissal of the entire case with prejudice. Stipulated Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Dec. 21, 2021), (ECF No. 293). Judge Maloney[2] signed and entered the stipulation and order on December 30, 2021, and the case was terminated. Stipulated Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Dec. 30, 2021), (ECF No. 294).

### B.     Summary of Plaintiff's Complaint

In the complaint filed in the instant case, Plaintiff alleges that on May 21, 2021, he was transferred to NCF so that he could adequately litigate the trial scheduled in the then-pending lawsuit discussed *supra*. (ECF No. 1, PageID.3.) On June 2, 2021, Plaintiff attended the law library and completed three legal photocopy disbursement authorization forms. (*Id.*) He "clearly wrote in bold print 6-7-21 as the filing deadline on each form" before giving them to Defendant Cebula. (*Id.*) Plaintiff told Defendant Cebula that he needed the documents to "be able to cite the proper Rules of Evidence to certain evidence [he] needed submitted and the state['s] attorney were objecting to and vice versa." (*Id.*)

---

[2] The case had been reassigned to Judge Maloney pursuant to an administrative order entered on May 27, 2021. Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 27, 2021), (ECF No. 253).

7

The next day, Plaintiff asked unit staff members if his legal copies were available, and he was told that they had not been given any photocopies to hand out. (*Id.*) On June 4, 2021, plaintiff again asked his unit officer about the whereabouts of the photocopies. (*Id.*) The unit officer told Plaintiff that "no photocopies had been dropped off since he had been in the unit." (*Id.*, PageID.4) The officer tried calling the librarian and got no response but told Plaintiff that he would let him know if the photocopies arrived. (*Id.*) Plaintiff asked if a counselor or resident unit manager were available to speak to. (*Id.*) The unit officer told him that neither were available, but that a sergeant "would be around shortly." (*Id.*) When the sergeant arrived, Plaintiff explained "what was going on and why [he] needed the photocopies for trial on Monday morning (6-7-21)." (*Id.*) The sergeant apologized and told Plaintiff that "everybody had already left for the weekend and would not be back until Monday and that there was nothing he could do at that time to rectify the problem." (*Id.*)

Plaintiff's civil trial in the litigation described *supra* began on June 7, 2021. (*Id.*, PageID.5.) Prior to beginning jury selection, Judge Maloney "went over the order of how things were going to go and over the final trial brief." (*Id.*) He also "began to ask about each exhibit or witness that both parties were objecting to in turn." (*Id.*) Plaintiff avers, however, that when Judge Maloney asked why he was objecting to certain defense exhibits or witnesses, he was unable to "provide the court with the proper Federal Rule of Evidence to support [his] position, forcing [him] to provide general answers which defense counsel and the court stated were not sufficient." (*Id.*) Plaintiff contends that if he had received his photocopies, he would "have been able to cite the proper rule of evidence and stated whether said witness or exhibit was to be used to refresh memory under Rule 612 or for its probative value as relevant evidence under Rule 401, etc." (*Id.*)

On June 10, 2021, Defendant Farley called Plaintiff to his office and gave him a stack of papers, with a photocopy receipt on top for Plaintiff to sign. (*Id.*) After signing, Plaintiff asked

8

Defendant Farley what he was supposed to do with the copies because his trial was over. (*Id.*) He asked why he was just now getting the copies when the receipt said the copies were made on June 2, 2021. (*Id.*) Defendant Farley responded, "I came to give them to you Monday but you were at court." (*Id.*)

Based on the foregoing, Plaintiff asserts First Amendment denial of access to the courts claims and Fourteenth Amendment equal protection claims. (*Id.*, PageID.7.) He also suggests violations of MDOC policy and procedure. (*Id.*) He seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*)

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **First Amendment Access to the Courts Claims**

Plaintiff alleges that Defendants impeded his First Amendment right to access the courts by not providing him the requested photocopies of the Federal Rules of Evidence prior to the start of his civil trial. (ECF No. 1, PageID.7.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a

10

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff does not provide a case number for the underlying action, but he has sufficiently described it in his complaint such that the Court has identified it as his litigation in *Orum v. Mich.*

11

*Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich.), as set forth above. Plaintiff asserts that Defendants violated his right to access the courts by not providing him the photocopies of the Federal Rules of Evidence he had requested prior to the start of his civil trial in that matter. (ECF No. 1, PageID.7.) According to Plaintiff, if he had received these photocopies, he would "have been able to cite the proper rule of evidence and stated whether said witness or exhibit was to be used to refresh memory under Rule 612 or for its probative value as relevant evidence under Rule 401, etc." (*Id.*, PageID.5.)

Plaintiff's complaint, however, does not permit the Court to infer that he has set forth a plausible access to the courts claim because he cannot show that he has a lost remedy. While Plaintiff contends that he was unable to fully explain his objections to defense exhibits and witnesses, he provides no information regarding the exhibits and witnesses he challenged. Furthermore, Plaintiff does not describe how access to the photocopies of the Federal Rules of Evidence would have helped him bolster his objections. Finally, Plaintiff fails to allege facts from which the Court could infer that Plaintiff would have succeeded in his objections to specific witnesses and exhibits and that the outcome of his civil trial would have been different. Plaintiff, therefore, has not sufficiently alleged a lost remedy and cannot maintain an access to the courts claim premised upon Defendants' untimely provision of the requested photocopies. Plaintiff's First Amendment access to the courts claims will, therefore, be dismissed.

### B. Fourteenth Amendment Equal Protection Claims

Plaintiff vaguely suggests that Defendants violated his equal protection rights under the Fourteenth Amendment by prohibiting him from receiving the requested photocopies prior to his stated deadline. (ECF No. 1, PageID.7.) The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The clause is, essentially, a directive that all people similarly situated should be treated alike.

Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decisionmaker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Here, Plaintiff's complaint is completely devoid of any allegations suggesting he was treated differently from inmates who were similarly situated in all relevant respects. Plaintiff's reference to "equal protection" is simply too conclusory and does not suffice to allege an equal protection violation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's Fourteenth Amendment equal protection claims will, therefore, be dismissed.

### C. Violations of MDOC Policy

Plaintiff also suggests that Defendants violated MDOC policy by prohibiting him from receiving the requested photocopies prior to his stated deadline. (ECF No. 1, PageID.7.) Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

13

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: September 7, 2022 /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge